

**FILED**

Jan 29 2019, 8:36 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nicholas F. Wallace
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE

Emily A. Szczepkowski
Shilts & Setlak, LLC
Fort Wayne, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

In re: The Marriage of:

Caleb Hazelett,

*Appellant-Respondent,*

v.

Hailey Hazelett,

*Appellee-Petitioner,*

January 29, 2019

Court of Appeals Case No.
18A-DN-1592

Appeal from the Allen Superior
Court

The Honorable Lori K. Morgan,
Magistrate

Trial Court Cause No.
02D08-1703-DN-358

**Robb, Judge.**

# Case Summary and Issues

Hailey Hazelett ("Mother") and Caleb Hazelett ("Father") were married in 2011 and Mother filed for divorce in March 2017. B.H. ("Child") was born less than two months later in May 2017 and Father, an active duty member of the military, was deployed the week of Child's birth. After a final hearing, the trial court awarded sole legal and primary physical custody to Mother and Father was ordered to have supervised parenting time and pay child support. Father appeals the trial court's order, raising the following issues for our review:

> (1) whether the trial court abused its discretion in awarding sole legal custody to Mother and by considering Father's active duty status as a factor in this determination;
>
> (2) whether the trial court's judgment ordering Father to have supervised parenting time absent a specific finding or evidence demonstrating parenting time would endanger Child's physical health or emotionally impair Child constitutes an abuse of discretion;
>
> (3) whether the trial court erred by denying Father overnight parenting time until Child reaches age three unless Father meets the requirements of Section II.B.3(C)(4) of the Indiana Parenting Time Guidelines; and
>
> (4) whether the trial court's child support calculation, which failed to address travel expenses to exercise parenting time but included $125 in weekly child care costs to Child's maternal grandmother, was clearly erroneous.

[2] With respect to the trial court's custody determination, we conclude the trial court failed to enter adequate findings and improperly considered Father's active duty status as a factor in awarding Mother sole legal custody. The trial court abused its discretion in ordering supervised parenting time without a finding or evidence that Child's physical or emotional health will be endangered by unsupervised parenting time. The trial court, did not, however, abuse its discretion when it followed the recommendations of the Indiana Parenting Time Guidelines by denying Father overnight parenting time until Child reaches age three unless Father meets the requirements of Section II.B.3(C)(4) of the Guidelines. Pertaining to the trial court's child support calculation, we conclude the trial court erred by failing to consider the significant travel expenses Father will incur in exercising his parenting time as a result of his military status. Finally, with respect to child care costs, we conclude the trial court failed to enter any findings regarding the reasonableness of the $125 in weekly child care costs paid to Child's maternal grandmother. We therefore affirm in part, reverse in part, and remand.

# Facts and Procedural History

[3] The parties married on December 30, 2011 and their Child was born May 6, 2017. Father is currently an active duty member of the United States Army and has been for seven years. Mother filed a Petition for Dissolution of Marriage on March 20, 2017, citing an irretrievable breakdown of the marriage. While Mother's petition was pending, Child was born on May 6, and within the same

week, Father was deployed to South Korea for a six- to nine-month mandatory deployment.

[4] The trial court held a final hearing on the petition for dissolution on March 22, 2018. On June 13, the trial court granted the parties' partial marital settlement agreement and issued its Decree of Dissolution, finding, in part:

> 12. [Mother] and [Father's] relationship is acrimonious as is evidenced by the text messages exchanged between the parties . . . . Communication between the parties has been difficult. [Father] is in the military and is sometimes stationed or assigned to areas where there is a time difference and/or communication is not readily available or allowed. [Mother] contends that she is unable to wait around to hear from [Father] on child-related matters and that the best interests of [Child] are served by the entry of an order granting her sole legal custody of [Child]. [Child] is currently residing with [Mother] and his maternal grandparents where he has resided since his birth . . . . [Father] was in Indiana for five (5) days after [Child's] birth and was then stationed in [South Korea] until March of 2018. He has not seen [Child] since that time other than when he returned to Fort Wayne the week of the hearing and saw [Child] two (2) times during that week. [Mother] contends that [Father] has not had any type of contact with [Child], including by electronic means, from the time of [Child's] birth until the time of his return to Indiana the week preceding the Final Hearing in this case and that he has not regularly provided hands-on care for [Child]. . . .
>
> * * *

14. Upon consideration of the statutory factors provided for in Ind. Code § 31-17-2-8, as well as a consideration of Ind. Code § 31-17-2-13 and § 31-17-2-15, the Court finds that the parties are unable to communicate and cooperate in advancing the welfare and best interests of [Child] and that an award of joint legal custody is not in [Child's] best interests. The Court further finds that given the fact that [Mother] has been [Child's] primary caregiver since birth and [Father] has had very little contact with [Child], [Child's] best interests are served by the entry of an order granting [Mother] sole legal and primary physical custody of [Child].

* * *

21. Given the lack of significant contact with [Child] and the fact that he has not had significant or regular hands-on caretaking responsibilities with [Child], the Court finds that the entry of an order granting [Father] supervised parenting time with [Child] for a period of time to allow him to get adjusted to caring for an infant child and to allow him to bond with [Child] is appropriate and in [Child's] best interests. The Court further finds that the entry of an order granting [Father] parenting time with [Child] pursuant to the dictates of the Indiana Parenting Time Guidelines according to the age of the child to be supervised by either of his parents when he is on leave is appropriate and in [Child's] best interests. [Father's] parenting time shall not include overnights until [Child] is three years old unless the provisions of Section II.C.3(C)(4) of the Indiana Parenting Time Guidelines have been met.

Appealed Order at 4-5, 6, 8. The trial court ordered Father's parenting time to be supervised until January 12, 2019 by either of his parents or a family member agreed on by the parties.

> Commencing January 13, 2019, [Father's] parenting time with [Child] shall occur during periods that he is on leave from the military which periods include the two (2), two-week blocks of time during each year as well as all other periods that he is on leave from the military. [Father's] parenting time shall be pursuant to the dictates of the Indiana Parenting Time Guidelines according to the age of the child, however, shall be unsupervised. [Father's] parenting time shall not include overnights until [Child] is three years old unless the provisions of Section II.C3(C)(4) of the Indiana Parenting Time Guidelines have been met. During the afore-referenced timeframes, [Father] shall provide [Mother] with thirty (30) days advance written notice of period when he will be on leave from the military and shall provide her with the dates that he will be exercising parenting time, as well as the location of his parenting time and shall advise [Mother] as to who will be supervising the parenting time during periods when his parenting time is supervised by order of the Court. When [Child] is three years old, [Father's] parenting time shall be unsupervised and shall occur according to the dictates of the Indiana Parenting Time Guidelines where distance is a factor.

*Id*. at 10. Father was ordered to pay $213.00 in child support each week and an additional $10.00 per week to be applied toward child support arrearage. Father now appeals. Additional facts will be provided as necessary.

# Discussion and Decision

# I. Standard of Review

On appellate review of judgments with findings of fact and conclusions of law, we "shall not set aside the findings or judgment unless erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011) (quoting Ind. Trial Rule 52(A)). A two-tiered standard of review is applied. *Tompa v. Tompa*, 867 N.E.2d 158, 163 (Ind. Ct. App. 2007). We first determine whether the evidence supports the findings and then whether the findings support the judgment. *Id.* We will set aside the trial court's findings and conclusions only if clearly erroneous. *Id.* A judgment is clearly erroneous when the record contains no facts or inferences to support it and after evaluating the record, we are firmly convinced a mistake has been made. *Id.* In making these determinations, we do not reweigh the evidence or reassess the credibility of witnesses but view the evidence most favorably to the judgment. *Id.*

"In conjunction with the Trial Rule 52 standard, there is a longstanding policy that appellate courts should defer to the determination of trial courts in family law matters." *D.G. v. S.G.*, 82 N.E.3d 342, 348 (Ind. Ct. App. 2017), *trans. denied.* Our supreme court has stated:

> Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time. Thus enabled to assess credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense,

particularly in the determination of the best interests of the
involved children.

*Best*, 941 N.E.2d at 502.

# II.  Custody

Father argues the trial court erred by granting Mother sole legal custody
because she has "demonstrated a pattern of parental and familial alienation"
rendering her unfit to have legal custody of Child.  Brief of Appellant at 22.  We
review a trial court's custody determination for an abuse of discretion, which
occurs when a decision is clearly against the logic and effect of the evidence
before the court.  *Russell v. Russell*, 682 N.E.2d 513, 515 (Ind. 1997).  In an
initial custody determination, both parents are presumed equally entitled to
custody.  *Hamilton v. Hamilton*, 103 N.E.3d 690, 694 (Ind. Ct. App. 2018), *trans.
denied*.  The trial court must determine custody and enter a custody order in
accordance with the child's best interests by considering all relevant factors,
including:

> (1) The age and sex of the child.
>
> (2) The wishes of the child's parent or parents.
>
> (3) The wishes of the child, with more consideration given to the
>     child's wishes if the child is at least fourteen (14) years of age.
>
> (4) The interaction and interrelationship of the child with:

(A) the child's parent or parents;

(B) the child's sibling; and

(C) any other person who may significantly affect the
child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either
parent.

(8) Evidence that the child has been cared for by a de facto
custodian, and if the evidence is sufficient, the court shall
consider the factors described in section 8.5(b) of this chapter.

Ind. Code § 31-17-2-8.

[8] A trial court is also permitted to award joint legal custody of a child so long as
joint custody is in the child's best interest, Ind. Code § 31-17-2-13, and the court
considers:

(1) the fitness and suitability of each of the persons awarded joint custody;

(2) whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare;

(3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;

(4) whether the child has established a close and beneficial relationship with both of the persons awarded joint custody;

(5) whether the persons awarded joint custody:

    (A) live in close proximity to each other; and

    (B) plan to continue to do so; and

(6) the nature of the physical and emotional environment in the home of each of the persons awarded joint custody.

Ind. Code § 31-17-2-15.

## A. Findings of Fact

Although not raised by Father, we are nevertheless compelled to "review and comment on the propriety of the trial court's findings." *Parks v. Delaware Cty. Dep't of Child Servs.*, 862 N.E.2d 1275, 1279 (Ind. Ct. App. 2007). "A finding of fact must indicate, not what someone said is true, but what is determined to be true, for that is the trier of fact's duty." *Moore v. Ind. Family & Soc. Servs. Admin.,*

682 N.E.2d 545, 547 (Ind. Ct. App. 1997). The bulk of the trial court's findings presented here are merely a recitation of each party's contentions, arguments, proposed findings, and portions of relevant statutory provisions. Excluding these insufficient findings, undisputed background information,[1] and a recitation of the court's jurisdiction, the only findings and conclusions pertaining to the trial court's custody determination include:

> 12. [Mother] and [Father's] relationship is acrimonious as is evidenced by the text messages exchanged between the parties . . . . Communication between the parties has been difficult. [Father] is in the military and is sometimes stationed or assigned to areas where there is a time difference and/or communication is not readily available or allowed. . . . [Child] is currently residing with [Mother] and his maternal grandparents where he has resided since his birth . . . . [Father] was in Indiana for five (5) days after [Child's] birth and was then stationed in [South Korea] until March of 2018. He has not seen [Child] since that time other than when he returned to Fort Wayne the week of the hearing and saw [Child] two (2) times during that week. . . .

> \* \* \*

> 14. Upon consideration of the statutory factors provided for in Ind. Code § 31-17-2-8, as well as a consideration of Ind. Code § 31-17-2-13 and § 31-17-2-15, the Court finds that the parties are unable to communicate and cooperate in advancing the welfare and best interests of the child and

---

[1] This includes the date of marriage and separation, name of Child, that the trial court dissolved the parties' marriage, and that Mother is not pregnant.

> that an award of joint legal custody is not in the child's best interests. The Court further finds that given the fact that [Mother] has been [Child's] primary caregiver since birth and [Father] has had very little contact with [Child],[Child] best interests are served by the entry of an order granting [Mother] sole legal and primary physical custody of [Child].

Appealed Order at 4, 6.

[10] The purpose of Rule 52(A) is "to provide the parties and the reviewing court with the theory upon which the trial judge decided the case in order that the right of review for error may be effectively preserved." *In re Paternity of S.A.M.*, 85 N.E.3d 879, 885 (Ind. Ct. App. 2017). Here, because the trial court failed to make appropriate findings, we are unable to determine whether the trial court's findings support its custody determination. Therefore, we must remand in order for the trial court to enter adequate findings which reflect what *the trial court* determined to be true. *See In re N.G.*, 61 N.E.3d 1263, 1266 (Ind. Ct. App. 2016) (remanding a termination of parental rights case to the trial court with instructions to enter proper findings of fact and conclusions of law to support termination due to the trial court's "sparse" findings, which left this court unable to "discern whether it based its termination order on proper statutory considerations.").

## B. Consideration of Father's Active Duty Military Service

[11] Father also contends the trial court erred by denying him overnight parenting time based solely on his absence due to his military service. Specifically, he

argues the trial court's only explanation for denying him overnight parenting time was because he lacked "significant contact with [Child]" and the fact that he has not had "significant or regular hands-on caretaking responsibilities with [Child]" and it failed to address other factors in Child's best interests. Br. of Appellant at 14 (citing Appealed Order at 8).

[12] Although Father argues the trial court erred by denying him overnight parenting time on the basis of his deployment, his argument and citation to authority leads us to believe he also challenges the trial court's award of legal custody to Mother on the sole basis of his military service. Father cites to cases interpreting Indiana Code section 31-17-2-21.3(a), which prohibits a court from considering a "parent's absence or relocation due to active duty service as a factor in *determining custody or permanently modifying a child custody order*."[2] (Emphasis added.) At the end of the argument section addressing Father's active duty military service, Father argues that this court's adoption of "the trial court's interpretation of [Father's] circumstances would only discourage single

---

[2] "Active duty" is defined as full-time service in either the armed forces of the United States or the National guard "for a period that exceeds thirty (30) consecutive days in a calendar year." Ind. Code § 31-9-2-0.8. Father's active duty status is undisputed in this matter.

Father contends the trial court erred in denying him overnight parenting time on the sole basis of his absence due to his military service. He asserts that the trial court "listed no other reasons in its order denying [him] overnight parenting time during his leave from active duty other than [his] recent absence from [Child]." Br. of Appellant at 15. To the extent that Father argues Indiana Code section 31-17-2-21.3 applies to parenting time, he is incorrect. The statute is silent as to parenting time and only addresses custody determinations and modifications. Moreover, it is logically situated in Chapter 2 of Article 17, actions for child custody and modification of child custody order, rather than Chapter 4, which addresses a noncustodial parent's right to parenting time. Thus, we find it inapplicable to parenting time.

fathers from participating in the armed forces for fear that their service to their country would be used as a weapon against them in custody proceedings" and asks that we "apply the statute to his circumstances as a shield, not as a sword, and protect him and his child by finding the trial court committed reversible error in making its custody determination on that basis only." Br. of Appellant at 16.[3]

[13] Here, the trial court found that "given the fact that [Mother] has been [Child's] primary caregiver since birth and [Father] has had very little contact with [Child], [Child's] best interests are served by the entry of an order granting [Mother] sole legal and primary physical custody" of Child. Appealed Order at 6. Thus, it appears that the trial court did, in fact, consider Father's absence due to his military service as a factor in awarding Mother sole legal custody, which is prohibited by Indiana Code section 31-17-2-21.3(a). In light of the trial court's insufficient findings and the fact that the court apparently considered Father's active duty service in its initial custody determination, we must also reverse and remand on this issue.

---

[3] We direct counsel to Indiana Appellate Rule 65(D), which states: "Unless later designated for publication in the official reporter, a memorandum decision shall not be regarded as precedent and shall not be cited to any court except by the parties to the case to establish *res judicata*, collateral estoppel, or law of the case." Although Father acknowledges there is limited case law interpreting Indiana Code section 31-17-2-21.3, Father cites to *Masters v. Masters*, 33 N.E.3d 1210 (Ind. Ct. App. 2015), an unpublished decision, substantively in support of his argument. *See* Br. of Appellant at 15. We therefore take this opportunity to remind counsel that citation to unpublished opinions is inappropriate and prohibited by the appellate rules.

# III. Parenting Time

In all parenting time controversies, courts must give foremost consideration to the best interests of the child. *In re Paternity of C.H.,* 936 N.E.2d 1270, 1273 (Ind. Ct. App. 2010), *trans. denied*. We review a trial court's parenting time decision for an abuse of discretion. *Hatmaker v. Hatmaker*, 998 N.E.2d 758, 761 (Ind. Ct. App. 2013). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or if the court misinterpreted the law. *Id.* "If there is a rational basis for the trial court's determination, then no abuse of discretion will be found." *In re Paternity of C.H.,* 936 N.E.2d at 1273.

## A. Supervised Parenting Time

Father argues the trial court erred by ordering Father's parenting time to be supervised without evidence or a specific finding that his unsupervised parenting time would endanger Child. The parenting time statute governs the modification, denial, and restriction of parenting time, *Meisberger v. Bishop*, 15 N.E.3d 653, 659 (Ind. Ct. App. 2014), and states: "A parent not granted custody of the child is entitled to reasonable parenting time rights unless the court finds, after a hearing, that parenting time by the noncustodial parent *might* endanger the child's physical health or significantly impair the child's emotional development." Ind. Code § 31-17-4-1(a) (emphasis added). "Even though the statute uses the word 'might,' this Court has previously interpreted the language to mean that a court may not restrict parenting time unless that parenting time 'would' endanger the child's physical health or emotional development[, and]

an order for supervision constitutes such a restriction." *Hatmaker*, 998 N.E.2d at 761.

[16] Although the trial court ordered Father's parenting time be supervised "for a period of time to allow [Father] to get adjusted to caring for an infant child and to allow him to bond with [Child] is appropriate and in [Child's] best interests[,]" it failed to enter a finding that Father's unsupervised parenting time would endanger Child's physical health or impair Child's emotional development in order to support such a restriction. Appealed Order at 8. Therefore, we conclude the trial court abused its discretion in this regard and we remand for the trial court to enter an order with sufficient findings to support supervised parenting time or to remove the restriction altogether.[4]

## B. Overnight Parenting Time

[17] Father challenges the trial court's decision denying him overnight parenting time with Child based solely on his absence due to his military service. On the

---

[4] The trial court ordered Father's parenting time to be supervised through January 12, 2019. We acknowledge that, given the timing, this issue may be largely moot. Nevertheless, we remand this issue to the trial court to take appropriate action in light of this decision.

We also believe the trial court failed to account for the possibility that Mother may be unreasonable in accommodating Father's parenting time given the evidence of Mother's past behavior. Its order required Father's parenting time to be supervised by "either of his parents or a family member agreed upon by the [parties]" and required that he provide Mother with thirty days advance written notice of his military leave and the dates, location, and supervising individual for his parenting time. Appealed Order at 9-10. Although the trial court characterized Mother and Father's relationship as "acrimonious[,]" as illustrated by the text messages between the parties, and found that communication between the parties has been difficult, its order omits any recommendations or procedure for conflict resolution specific to the parties in light of its findings regarding the nature of the parties' relationship. *Id.* at 4.

other hand, Mother argues Indiana Code section 31-17-2-8 and the Indiana Parenting Time Guidelines allow the trial court to restrict Father's overnight visits with Child in accordance with Child's age. Although we concluded Indiana Code section 31-17-2-21.3 applies to custody, not parenting time, s*ee supra* ¶ 12 n.2, we address whether the trial court erred in delaying Father's overnight parenting time.

[18] A court's primary consideration in parenting time disputes is the child's best interests. *In re Paternity of C.H.*, 936 N.E.2d at 1273. In its order, the trial court quoted relevant portions of the Indiana Parenting Time Guidelines:

> 15. Section II.B. of the Indiana Parenting Time Guidelines provides: B. Unless it can be demonstrated by the custodial parent that the non-custodial parent has not had regular care responsibilities for the child, parenting time shall include overnights. If the non-custodial parent has not previously exercised regular care responsibilities for the child, then parenting time shall not include overnights prior to the child's third birthday, *except as provided in subsection C. below.*

> 16. According to the Indiana Parenting Time Guidelines, Section II. Specific Parenting Tile [sic] Provisions, B. Overnight Parenting Time, Commentary 2:

> 'Where there is a significant lack of contact between a parent and a child, there may be no bond, or emotional connection, between the parent and the child. It is recommended that scheduled parenting time be 'phased in' to permit the parent and child to adjust to their situation. It may be necessary for an evaluation of the current relationship (or lack thereof) between the parent and the child in order to recommend a parenting time plan. A

guardian ad litem, a mental health professional, a representative from a domestic relations counseling bureau or any other neutral evaluator may be used for this task.

17. Section II, paragraph C.1. of the Indiana Parenting Time Guidelines provides: . . . The first few years of a child's life are recognized as being critical to that child's ultimate development. Infants (under eighteen months) and toddlers (eighteen months to three years) have a great need for continuous contact with the primary care giver who provides a sense of security, nurturing and predictability. It is thought best if scheduled parenting time in infancy be minimally disruptive to the infant's schedule.

18. Section II, C. Commentary 3 . . . provides: Overnight contact between parents and very young children can provide opportunities for the[m] to grow as a family. At the same time, when very young children experience sudden changes in their night time care routines, especially when these changes include separation from the usual caretaker, they can become frightened and unhappy. Under these circumstances, they may find it difficult to relax and thrive, even when offered excellent care.

19. Section II. C. Commentary 4 . . . provides . . .: When a parent has not provided regular hands-on care for the child prior to separation, overnight parenting time is not recommended until the parent and the child have developed a predictable and comfortable daytime care taking routine.

Appealed Order at 6-8 (emphasis added). The trial court found that Father "lack[ed] significant contact" with Child and has not had "significant or regular hands-on caretaking responsibilities" with Child. *Id*. at 8. As a result, the trial court's order excluded overnight parenting time "until [Child] is three years old

unless the provisions of Section II.C.3(C)(4) of the Indiana Parenting Time Guidelines have been met." *Id.* at 10.

[19] Section II.C.3(C)(4) states "[i]f the non-custodial parent who did not initially have regular care responsibilities has exercised the scheduled parenting time under these guidelines for at least nine (9) months, regular parenting time as indicated in section II. D. 1. below may take place."[5] The commentary to this provision states it is

> intended to provide a way to shorten the last age-based parenting time stage when the infant is sufficiently bonded to the non-custodial parent so that the infant is able to regularly go back and forth, and particularly wake-up in a different place, without development-retarding strain. If this is not occurring, the provision should not be utilized. The nine (9) month provision is applicable only within the 19 to 36 month section. Therefore, as a practical matter, the provision could not shorten this stage until the infant is at least 28 months old. The provision applies equally to all non-custodial parents.

[20] We reiterate that a trial court's parenting time decision is reviewed under an abuse of discretion standard. *Hatmaker*, 998 N.E.2d at 761. It is clear that Section II.B of the Indiana Parenting Time Guidelines does not recommend overnight parenting time before age three if a noncustodial parent has not exercised regular caretaking responsibilities unless the requirements of Section

---

[5] Section II.D.1. addresses regular parenting time with a child over age three and includes overnight parenting time.

II.C.3(C)(4) have been met. Therefore, we cannot conclude the trial court abused its discretion regarding overnight parenting time when its decision is consistent with the recommendations of the Indiana Parenting Time Guidelines.[6]

# IV. Child Support

[21]  A trial court's calculation of child support is presumptively valid, and we will reverse only if it is clearly erroneous or contrary to law. *Ashworth v. Ehrgott*, 934 N.E.2d 152, 157 (Ind. Ct. App. 2010). "A decision is clearly erroneous if it is clearly against the logic and effect of the facts and circumstances that were before the trial court." *Id*. at 157-58.

[22]  Father alleges the trial court erred by failing to consider the extraordinary travel expenses he will incur to exercise parenting time with Child as a result of his active duty service. We agree. A trial court may deviate from the child support guidelines and "[a]n infinite number of situations may prompt a judge to deviate from the Guideline amount[,]" including when a parent incurs "significant travel expense in exercising parenting time." Ind. Child Support Guideline 1, cmt. Deviation from the guideline amount based on travel

---

[6] We note, however, that Father's ability to exercise overnight parenting time prior to age three by meeting the requirements of Section II.B.3(C)(4) may be difficult given the nature of his employment. Therefore, we encourage the trial court to consider Father's non-traditional work schedule and the best interests of Child in light of the provision if Father believes he has met this provision and brings a motion to modify parenting time. *See* Section II.B., cmt. 5. Similarly, we again express our concern with the lack of specific guidance pertaining to the resolution of parenting time disagreements given the "acrimonious" nature of the parties' relationship and difficulty communicating. Appealed Order at 4; *see supra* n.4.

expenses in exercising parenting time is within the trial court's discretion. *Ashworth*, 934 N.E.2d at 164.

[23] The commentary to Guideline 6 of the Indiana Child Support Guidelines addresses the cost of transportation for parenting time and states, in relevant part:

> When transportation costs are significant, the court may address transportation costs as a deviation from the child support calculated by the Worksheet, or may address transportation as a separate issue from child support. Consideration should be given to the reason for the geographic distance between the parties and the financial resources of each party.

[24] At the final hearing and in his brief to the trial court, Father requested a deviation from the Child Support Worksheet, namely a $30 weekly reduction in support due to the "significant travel costs" he would incur "in order to take advantage of his parenting time" with Child. Br. of Appellant at 25. *See also* Tr., Vol. 1 at 18; Appellant's App., Vol. II at 40-41. Father was scheduled to be stationed in Fort Carson, Colorado, shortly after the March 22 hearing and argued he would "have to pay for travel each and every time he sees [Child]." Appellant's App., Vol. II at 41. In calculating the deviation, Father estimated that four visits per year, at an average round trip cost of $400, would cost a total of $1,600, resulting in a weekly reduction in support of roughly $30.

[25] On the other hand, Mother argued to the trial court that a deviation in the support worksheet is inappropriate to accommodate Father's travel because "[w]hen he returns to Indiana, he is returning to his hometown. He is seeing

his family and friends, not just [Child]. [Child] is not traveling for parenting time. To lessen child support for Father to visit persons other than [Child] is not the deviation the Guidelines had in mind." *Id*. at 34.

[26] The record reveals that Father is in the military, was deployed to South Korea the week of Child's birth for a six to nine-month mandatory deployment and is scheduled to be stationed in Colorado. Father's military service mandates his absence and in order to exercise parenting time with Child, Father will incur significant travel expenses. The trial court, however, failed to address this issue with relevant findings. We therefore conclude the trial court's omission was clearly against the logic and effect of the facts and circumstances presented before it. Accordingly, we remand this issue to the trial court.

[27] Finally, Father argues the trial court erred by including $125 in weekly child care expenses to Child's maternal grandmother, claiming the costs are unnecessary given that Father's mother lives within driving distance from Mother and Child and is available to care for Child at no cost. Br. of Appellant at 22. The trial court found that Mother pays $125 per week in child care costs and included that amount in its Child Support Obligation Worksheet as a work-related child care expense. However, the trial court did not make appropriate findings pertaining to the reasonableness of child care costs. Thus, on remand, the trial court should also enter appropriate findings pertaining to this issue.

# Conclusion

The trial court properly delayed Father's overnight parenting time pursuant to the Indiana Parenting Time Guidelines. However, the trial court failed to enter appropriate findings and improperly considered Father's active duty status in its custody determination. We conclude the trial court erred in its decision regarding supervised parenting time and child support. Therefore, we affirm in part, reverse in part, and remand.

Affirmed in part, reversed in part, and remanded.


Riley, J., and Kirsch, J., concur.