## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 28 2020, 9:37 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Julianne L. Fox
Evansville, Indiana

ATTORNEY FOR APPELLEE

Jonathan M. Young
Law Office of Jonathan M. Young, P.C.
Newburgh, Indiana

# I N  T H E
# COURT OF APPEALS OF INDIANA

In re the Matter of the Paternity of:
L.W. and M.W. *(Minor Children)*

Aaron Williams,

*Appellant-Petitioner,*

v.

Kayla Handy,

*Appellee-Respondent,*

July 28, 2020

Court of Appeals Case No.
19A-JP-2652

Appeal from the Vanderburgh Superior Court

The Honorable Sheila M. Corcoran, Senior Judge

Trial Court Cause No.
82D01-1607-JP-926

**Robb, Judge.**

# Case Summary and Issue

[1] Aaron Williams ("Father") and Kayla Handy ("Mother") have two minor children together. Following an incident in which Mother's then-boyfriend, Shastin Handy, physically abused one of the children, the trial court granted Father primary physical custody of the children with Mother having supervised visitation and prohibited any contact between the children and Handy. Mother subsequently filed a petition to modify parenting time. Following a hearing, the trial court issued an order granting Mother unsupervised parenting time and allowing contact between the children and Handy, now Mother's husband. Father appeals and presents one issue for our review: whether the trial court abused its discretion in modifying Mother's parenting time to allow contact between the children and Handy. Concluding the trial court did not abuse its discretion, we affirm.

# Facts and Procedural History

[2] Mother and Father are the unwed biological parents of M.W., born July 7, 2012, and L.W., born September 16, 2013 ("Children"). Mother and Handy share one child together and Handy has custody of his two children from another relationship. Mother originally had primary physical custody of Children and Father exercised parenting time.

[3] In March 2017, the Indiana Department of Child Services ("DCS") received a report alleging that Handy physically abused M.W. Specifically, Handy had

spanked her as a form of corporal punishment leaving bruises on her bottom. As a result, DCS opened a child in need of services case ("CHINS").

[4] On April 11, Father filed a Verified Petition for Emergency Change of Custody.[1] In his petition, Father stated that Children had been placed with him temporarily through the CHINS matter, alleged that Handy physically abused M.W., and requested emergency custody of Children and a protective order against Handy. At a hearing in May, the parties agreed that Father would have temporary custody of Children, with Mother's parenting time to be supervised by an agreed-upon third party. Handy was prohibited from being present during Mother's visitation. Ultimately, Handy admitted to the allegations and DCS closed the CHINS case on May 23. At some point after the incident, Mother and Handy were married.[2]

[5] On January 16, 2018, the trial court held a progress hearing and continued Father's temporary custody. On December 13, 2018, the trial court held a contested hearing on several pending motions and on January 28, 2019, the trial court issued an order granting Father primary physical custody of Children and Mother supervised visitation; ordering that Father discuss any major decisions regarding education, non-emergency medical care, and religious matters with

---

[1] The trial court assigned separate cause numbers for each child in this paternity action: 82D06-1607-JP-926 for L.W. and 82D06-1607-JP-927 for M.W. The Chronological Case Summary and appealed order for each cause is identical. *See* Appellant's Appendix, Volume II at 2-5, 6-28. A copy of Father's petition for emergency custody was not included in the record. Pursuant to Indiana Evidence Rule 201, however, we have taken judicial notice of the record of the court below as necessary to inform our decision.

[2] The record is unclear as to whether the two were married in December of 2017 or 2018.

Mother, but allowing Father to make the final decision; permitting Mother to attend Children's activities; and prohibiting Handy from being present or in contact with Children. *See* Appellant's App., Vol. II at 36-37.

[6] On April 17, Mother filed her Motion to Set Aside Entry and Request for Clarification and Verified Petition to Modify Parenting Time and Child Support. *See id.* at 29.[3] Regarding her petition to modify parenting time, Mother alleged "Father will only agree to the paternal grandmother or the maternal grandparents to act as a third-party supervisor. Due to the Father's schedule and the schedules of the supervisors the Father will agree to supervising, [she] is not receiving her full allotment of parenting time." *Id.* at 30. As such, Mother requested that the court remove the supervision requirement and increase her parenting time.

[7] The trial court held a hearing on Mother's motion on August 12 and 28 and took the matter under advisement. On October 22, 2019, the trial court issued an order granting Mother's petition to modify parenting time, which stated, in relevant part:

> [I]t is in the best interests of [Children] that Mother's parenting time be modified. The Court finds that commencing on the date of this Order Mother shall have unsupervised parenting time with [Children] every other weekend beginning Friday after school day care until Sunday evening at 8:00 p.m. and every Wednesday

---

[3] Mother later clarified that her motion to set aside judgment sought relief from a child support order. *See* Transcript of Evidence, Volume II at 32.

after school day care until 8:00 p.m. . . .  [Handy] may be present during such parenting time if personally supervised by Mother or by a third party agreed upon by the parents.  No one shall use corporal discipline on [Children].  [Handy]'s supervised parenting time will be terminated sixty days from this Order.

Appealed Order at 1.  Father now appeals.

# Discussion and Decision

## I.  Standard of Review

[8]     "In all parenting time controversies, courts must give foremost consideration to the best interests of the child."  *Hazelett v. Hazelett*, 119 N.E.3d 153, 161 (Ind. Ct. App. 2019).  When reviewing a parenting time issue, we give deference to the trial court's determination and reverse only for an abuse of discretion.  *M.S. v. C.S.*, 938 N.E.2d 278, 285 (Ind. Ct. App. 2010).  An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or if the court misinterpreted the law.  *Hatmaker v. Hatmaker*, 998 N.E.2d 758, 761 (Ind. Ct. App. 2013).  "If there is a rational basis for the trial court's determination, then no abuse of discretion will be found."  *In re Paternity of C.H.*, 936 N.E.2d 1270, 1273 (Ind. Ct. App. 2010), *trans. denied.*  As such, "it is not enough on appeal that the evidence might support some other conclusion; rather, it must positively require the conclusion advanced by the appellant."  *M.S.*, 938 N.E.2d at 285.  We may not reweigh the evidence or judge the credibility of the witnesses.  *Downey v. Muffley*, 767 N.E.2d 1014, 1017 (Ind. Ct. App. 2002).

# II. Parenting Time

We begin by addressing Father's argument that the trial court "modified legal custody without a proper request before the court and without [his] knowledge to litigate the issue." Appellant's Brief at 12. Specifically, he contends:

> As a fit parent who has consistently made decisions in the best interests of his children, Father should be given deference in regard to any contact that [Handy] has with these children – especially in light of the physical abuse that occurred by [Handy]. Father, who has sole legal custody did not agree to removing the no contact order, and he specifically requested to continue no contact with [Handy] who admittedly and unremorsefully physically abused one of these girls. Against Father's wishes, the trial court granted third-party parenting time, specifically, "[Handy]'s supervised parenting time will be terminated sixty days from the date of this order."

*Id.* at 13 (record citations and emphasis omitted). Father's assertions are incorrect. "Legal custody" refers to a parent's authority and responsibility for making major decisions concerning his or her child's upbringing, including education, health care, and religion. *See* Ind. Code § 31-9-2-67. And as the parent with sole legal custody, Father would be entitled to decide who his Children have contact with if the trial court had not weighed in by issuing a parenting time order. "A trial court is empowered to specify and enforce the visitation rights of the non-custodial parent pursuant to Indiana Code[,]" *Perkinson v. Perkinson*, 989 N.E.2d 758, 762 (Ind. 2013), and there is nothing to suggest that the trial court in this case did not have the right to weigh in on the matter. Mother filed a petition to modify parenting time and the trial court held

a hearing, heard the evidence, and rendered a decision.  The trial court did not modify legal custody and its decision does not, in any way, impact Father's own parenting time with Children.

[10]     Similarly, we are unpersuaded by Father's argument that the issue of the no contact provision in the parenting time order was not properly before the trial court and he did not have notice that the issue would be litigated at the hearing. *See* Appellant's Br. at 13-14.  Although Mother did not specifically request that the no contact order be removed in her motion to modify parenting time, it is clear from our review of the transcript that Mother asked that the restriction be lifted and the parties litigated this issue.  *See* Tr., Vol. II at 28 (Mother's attorney stating that "[t]he order is that [Handy] have no contact with [Children and w]e're asking for a change in that order").  At the hearing, after the parties agreed to unsupervised parenting time for Mother, Father's attorney stated, "The only issue still before this Court is whether [Handy] will be permitted to be [present during Mother's parenting time] or not."  *Id.* at 108-09.  And the trial court made it clear that it would be "determining parenting time and whether it's supervised or unsupervised and whether [Handy] can be present or not present."  *Id.* at 109.  It is apparent that this was an issue properly before the court and Father presented multiple witnesses for purposes of demonstrating that the no contact provision should remain in place.  Therefore, Father's argument fails.

[11]     We now turn to the heart of this appeal, namely the removal of the contact order.  Father does not challenge the trial court's decision to allow Mother to

have unsupervised parenting time; he challenges the trial court's order only to the extent it allows Handy to have contact with Children. Father contends there was no rational basis for or any "evidence to support the removal of the no contact order or show the same to be in [C]hildren's best interest." Appellant's Br. at 8. We disagree.

[12] Indiana Code section 31-17-4-2 governs the modification, denial, and restriction of parenting time and provides: "The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child. However, the court shall not restrict a parent's[4] parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development." "Even though the statute uses the word 'might,' this Court has previously interpreted the language to mean that a court may not restrict parenting time unless that parenting time 'would' endanger the child's physical or emotional development." *Hatmaker*, 998 N.E.2d at 761.

[13] Father argues that "[t]here is a rational basis for the no contact order which does not restrict Mother's parenting time." Appellant's Br. at 11. However, the issue in this case is whether there is a rational basis for the trial court's order effectively removing the no contact order, not an analysis of the previous parenting time order containing the no contact order. The order at issue

---

[4] "Parent" is defined as "a biological or an adoptive parent." Ind. Code § 31-9-2-88(a).

requires that contact between Handy and Children be supervised for sixty days and allows unsupervised contact thereafter.

[14] Here, the trial court concluded that modification of its previous parenting time order, which required Mother's parenting time to be supervised and prohibited any contact between Children and Handy, should be modified. The record shows that in March 2017, Handy spanked one of the Children as a form of corporal punishment. DCS intervened and opened a CHINS case, which caused the restriction to be implemented immediately after the incident.

[15] At the time of the most recent hearing, the CHINS case had been closed for over two years. And since the incident, Handy has not had any contact with Children. Mother and Handy both testified that they have not used corporal punishment or any other form of inappropriate discipline with children in their household since the incident. *See* Tr., Vol. II at 28, 50, 54. Mother testified, "Our discipline, if the children get in trouble or anything, it is a time out or we'll take away their Nintendo Switch or no movie at bedtime." *Id.* at 25. When asked what she had learned by going through the CHINS process, she stated: "To be a lot more patient, that's for sure. And that if the children are acting out or they get in trouble, it is best to just take a deep breath, reevaluate the situation and then handle it appropriately." *Id.*

[16] In the event Handy were to use corporal punishment, Mother stated she "would immediately put a stop to it[,] would probably get a hold [sic] of authorities to handle the situation" and prevent it from escalating. *Id.* at 27. She further

testified that she and the children "wouldn't be in the house or we would figure out ways to take steps to better [Handy.]" *Id.*

[17] Mother does not believe it is in Children's best interest for Handy to be prohibited from having contact with them. She explained, "In the beginning, [it was] possibly [in their best interest], but since it's been so long, I feel like there should be no reason that they don't have any contact" with him. *Id.* at 29. Handy also believes it is in Children's best interests to have a relationship with him. At the hearing, Handy was asked what he has done to educate himself since the incident. He responded, "I took part of a class that [DCS] ordered me to take, but it ended up interfering with my job. And I learned a few things from that." *Id.* at 54. He learned how to handle various stressors in his life and as a result, he and Mother "changed [their] whole discipline technique." *Id.* They do not "put [their] hands on the children" and instead, they discipline the children with time outs or not allowing them to go somewhere on the weekend or watch a movie at night. *Id.*

[18] Ultimately, the record establishes that the incident occurred over two years ago. Since that time, Mother and Handy have gotten married, ceased all corporal punishment, learned how to handle stress, and have been able to appropriately discipline their children by taking away their Nintendo, placing them in time out, or not allowing them to do certain activities. It is clear the trial court found this evidence convincing, concluded modification of parenting time was in Children's best interests, and modified parenting time accordingly. To illustrate there is no rational basis for the order, Father points to several witnesses,

primarily his family, who testified that it was not in Children's best interests to have contact with Handy. Father's argument, however, is merely a request for this court to reweigh the evidence in his favor, which we cannot do. *See Downey*, 767 N.E.2d at 1017. We afford great deference to the trial court's decision as it was in the best possible position to evaluate the evidence and judge the credibility of the witnesses. *See M.S.*, 938 N.E.2d at 285. Because our review of the record reveals a rational basis for the trial court's parenting time decision, we cannot conclude the trial court abused its discretion.

## Conclusion

[19] A rational basis supports the trial court's parenting time order and therefore, the trial court did not abuse its discretion. Accordingly, we affirm.

[20] Affirmed.

May, J., and Vaidik, J., concur.