

I N  T H E

# Court of Appeals of Indiana

Jon Hansford Holstein,

*Appellant-Respondent*

v.

Lacey Lawana Holstein,

*Appellee-Petitioner*



FILED

Jun 16 2026, 9:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

June 16, 2026

Court of Appeals Case No.
25A-DC-2767

Appeal from the Johnson Superior Court

The Honorable Marla Clark, Judge

Trial Court Cause No.
41D04-2401-DC-48

**Opinion by Judge DeBoer**
Judges Mathias and Kenworthy concur.

**DeBoer, Judge.**

## Case Summary

Following a final dissolution hearing, the trial court awarded Lacey Holstein (Mother) sole legal custody and primary physical custody of the parties' two children. Jon Holstein (Father) appeals, arguing the court abused its discretion by declining to award joint legal custody and primary physical custody to him. Finding no abuse of discretion, we affirm.

On appeal, Mother requests that we order Father to pay her $5,000 in attorney's fees as a sanction for citing fictitious cases in his initial brief. Finding monetary sanctions are not warranted, we deny Mother's request.

## Facts and Procedural History

Mother and Father (collectively, Parents) were married in June 2012 and had two children together: D.H. (born March 2013) and E.H. (born October 2016) (collectively, the Children). Mother was the Children's primary caregiver.

Toward the end of their marriage, Parents were employed by the same company. Starting in October 2023, Father accused Mother of having an affair with one of their coworkers. At some point, Father said he watched Mother on the security cameras[1] at work because he was uncomfortable with her relationship with this coworker. On January 8, 2024, Father asked Mother if

---

[1] Father had access to the security cameras as part of his job.

she had told anyone he had watched her on the company's cameras, and Mother confirmed she told their boss. Father got angry, "started punching the wall repeatedly, [and] scream[ed] profanities[.]" Transcript at 25. Afraid, Mother told the Children to put on their shoes and get in the car. Father followed Mother to the car and initially tried to block it from leaving the driveway. Parents then continued arguing and yelling at each other outside the car prompting a neighbor to tell them she was calling the police. Father raised his fist over the car window as if threatening to break it, then he took Mother's phone from her and went inside. Mother got in the car and left with the Children. Later, she filed for a protective order against Father, and on January 24, 2024, she filed for divorce.

[5] In July, Parents entered into an Agreed Provisional Order. They agreed that Mother would have primary physical custody of the Children subject to Father's parenting time, and they would exercise joint legal custody. Mother also agreed to dismiss the protective order against Father.

[6] Between the entry of the provisional order and the final dissolution hearing, Parents experienced substantial difficulty communicating and cooperating with one another. The topics of their disagreements ran the gamut: doctor appointments, medical decisions, information sharing, scheduling, pick-up and drop-off times, phone calls with the Children, extracurricular activities, injuries, and birthday parties. Typically, one parent would ask the other a question or relay information, and the discussion would escalate to accusations and an argument. Other times, the conversation would begin with a discussion about

one issue, like a dentist appointment, and end with them arguing about a completely unrelated issue, like school supplies. *See, e.g.*, Respondent's Exhibit A at 159.

[7] At the final dissolution hearing in June 2025, Parents testified to their versions of the events above. Mother denied she had an affair with her coworker, testifying that she and the coworker did not start dating until March 2024. She did confirm that this coworker had since moved in with her and the Children. Mother requested sole legal and primary physical custody of the Children, whereas Father sought joint legal and primary physical custody.[2] Parents also addressed matters relating to their finances, division of property, and payment of child support, none of which are at issue in this appeal. After taking the matter under advisement, the trial court entered a decree of dissolution in October with findings of fact and conclusions of law. The court awarded sole legal and primary physical custody of the Children to Mother and granted Father parenting time pursuant to the Indiana Parenting Time Guidelines. Father appealed.

[8] Shortly after Father's counsel filed the reply brief in this appeal, he informed this Court that Father's initial brief contained citations to two non-existent cases and attributed a fictious quote to an existing case. He explained that

---

[2] It is not entirely clear from Father's testimony whether he sought primary physical custody but intended to split parenting time with Mother equally, or whether he sought shared physical custody. Regardless, the trial court found Father requested primary physical custody, and Father does not challenge that finding.

Father had provided him with these citations, which he had included in the brief without verifying their existence or accuracy. While reviewing these authorities in preparing Father's reply, counsel discovered they did not exist. Counsel subsequently filed a notice to this Court explaining the situation and seeking leave to file an amended brief, which this Court granted. After Father amended his initial brief, Mother filed an amended appellee's brief and requested that we sanction Father for the use of fictitious citations.

## Discussion and Decision

### 1. Findings of Fact

Initially, Father argues the trial court's findings did not "sufficiently articulate its reasoning for awarding Mother" sole legal and primary physical custody. Appellant's Amended Brief at 13. Under Indiana Code section 31-17-2-8.2(b) (2025), a court's order awarding custody must include findings of fact and conclusions of law.[3] In our review of those findings and conclusions, we determine whether the evidence supports the findings and whether the findings support the judgment. *Rasheed v. Rasheed*, 142 N.E.3d 1017, 1021 (Ind. Ct. App. 2020), *trans. denied*; *see* Ind. Trial Rule 52(A). "We set aside judgments only when they are clearly erroneous, and will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment."

---

[3] Indiana Code section 31-17-2-8.2 came into effect on July 1, 2025, three months before the trial court entered its order in this case.

*Richter v. Richter*, 277 N.E.3d 123, 127 (Ind. Ct. App. 2026) (quoting *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002)).

[10] Father does not challenge any specific finding but rather asserts the findings as a whole fail to indicate why the trial court decided it was in the Children's best interests for Mother to be awarded sole legal and primary physical custody. According to Father, this denied him "[his] fundamental right[] to raise his children under the Fourteenth Amendment to the [U.S.] Constitution." Appellant's Amend. Br. at 13. However, he offers no legal authority to suggest that inadequate findings amount to a constitutional violation. Left only with Father's unsupported contentions, we are unpersuaded by his argument.

[11] Within this constitutional claim, Father also argues that insufficient findings constitute reversible error and relies on *Hazelett v. Hazelett*. 119 N.E.3d 153, 159 (Ind. Ct. App. 2019). There, a panel of this Court could not "determine whether the trial court's findings support[ed] its custody determination" because the trial court "failed to make appropriate findings[.]" *Id.* As a result, the panel *remanded* the matter back to the trial court for amended findings. *Id.* Unlike the findings in this case, those in *Hazelett* were insufficient because they were "merely a recitation of each party's contentions, arguments, proposed findings, and portions of relevant statutory provisions." *Id.* But even if we agreed with Father that the trial court's findings left us unable to ascertain "the theory upon which the trial [court] decided the case[,]" we would take the *Hazelett* panel's approach and simply remand for adequate findings, not reverse the judgment. *Id.* (quoting *In re Paternity of S.A.M.*, 85 N.E.3d 879, 885 (Ind. Ct.

App. 2017)). Nevertheless, the trial court's findings here are adequate and indicate the bases for awarding primary physical and sole legal custody to Mother, so we proceed to consider whether the findings support those determinations.

## 2. Custody

[12] Father argues the trial court abused its discretion in awarding Mother sole legal and primary physical custody. Given trial courts' "unique, direct interactions with the parties face-to-face, often over an extended period of time[,]" we show them great deference in our review of family law matters. *Purnell v. Purnell*, 131 N.E.3d 622, 627 (Ind. Ct. App. 2019) (quoting *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011)), *trans. denied*. We review custody determinations for an abuse of discretion, and we will affirm unless "the evidence . . . positively require[s] the result sought by the appellant." *Id.*

[13] The court's primary consideration in awarding custody is the best interests of the Children. Ind. Code § 31-17-2-8 (2025). There is no presumption in favor of either Parent, and the court must

> consider all relevant factors, including the following:
>
> (1) The age and sex of the [Children].
>
> (2) The wishes of the [Children]'s parent or parents.

(3) The wishes of the [Children], with more consideration given to the [Children]'s wishes if [they are] at least fourteen . . . years of age.

(4) The interaction and interrelationship of the [Children] with:

   (A) the [Children]'s parent or parents;

   (B) the [Children]'s sibling; and

   (C) any other person who may significantly affect the [Children]'s best interests.

(5) The [Children]'s adjustment to [their]:

   (A) home;

   (B) school; and

   (C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the [Children have] been cared for by a de facto custodian[.]

I.C. § 31-17-2-8.  With these factors in mind, we turn to the trial court's specific custody determinations.

### *2.1. Physical Custody*

[14]     Father argues the trial court should have awarded Parents shared physical custody "because Indiana courts have held that the determination regarding physical custody relies upon a determination of the children's best interests and cannot marginalize a fit parent." Appellant's Amend. Br. at 21 (citing I.C. 31-17-2-8). According to Father, the physical custody arrangement imposed by the court here violated these holdings because both he and Mother "were found to be fit parents . . . ." *Id.* at 22. Setting aside Father's failure to direct us to any Indiana case with such holdings, we find the record supports the court's physical custody determination.

[15]     The trial court's recitation of the statutory factors in its order makes it clear that it considered them in its conclusions. While many of them did not necessarily favor one parent over the other, the court noted a few factors that tipped the scales in Mother's favor overall. *See* Appellant's Appendix Vol. 2 at 11-12. Notably, it found that Mother was the Children's primary caregiver during the marriage. She testified that she woke the Children up each day, got them ready for school in the morning and for bed at night, packed their school lunches, went through their backpacks after school, helped them with their homework, made the family dinner, and did all the laundry. Father confirmed this, acknowledging that Mother cared for the Children while he worked approximately seventy hours each week and often traveled out of state for several days. *See Anselm v. Anselm*, 146 N.E.3d 1042, 1047 (Ind. Ct. App. 2020) (affirming trial court's award of primary physical custody to Mother where it

found she was the primary caregiver and a consistent routine for the children was in their best interests), *trans. denied*. The court also noted Father's "anger management problems when he [was] emotionally stressed." Appellant's App. Vol. 2 at 12. Father indeed admitted to punching a hole in the wall during the January 2024 fight, and Mother testified that he had engaged in similar behavior in the past. *See* Tr. at 27.

[16] The trial court ultimately found that shared physical custody was "unworkable here" because there was "little trust or good will between" Parents. Appellant's App. Vol. 2 at 12. It observed that Parents "clearly [hadn't] resolved their feelings about the circumstances surrounding the end of their marriage[,]" as evidenced by the fact that the dissolution hearing focused primarily on their personal disagreements rather than the Children. *Id.* As we discuss at length in Part 2.2., we agree with the court that "[t]he evidence was replete with disagreements and discord between . . . [P]arents." *Id.* at 10. They continuously resisted working together or engaging in effective communication about major and minor issues alike.

[17] Father insists we view Mother as the sole source of this discord (and therefore undeserving of primary physical custody), but it is not our role to reweigh the evidence or judge witness credibility. The record supports the court's determination that both Parents contributed to the dysfunction. "After a careful consideration of the statutory factors" and "having observed the demeanor and assessed the credibility of the witnesses[,]" the trial court concluded it was in the Children's best interests for Mother to have primary physical custody.

Appellant's App. Vol. 2 at 9, 12. Based on the totality of the evidence and the deference we owe to the trial court in family matters, we cannot say the court abused its discretion in awarding Mother primary physical custody of the Children. *See Kondamuri v. Kondamuri*, 852 N.E.2d 939, 949 (Ind. Ct. App. 2006) (declining father's request to reweigh conflicting evidence and affirming the award of physical custody to mother).

### 2.2. Legal Custody

[18] Father also contends the trial court should have awarded Parents joint legal custody of the Children. In addition to the custody factors listed in section 31-17-2-8, *see supra* Part 2, the court must consider several other factors to determine whether joint legal custody is in the Children's best interest. Those factors include:

> (1) the fitness and suitability of each of the persons awarded joint custody;
>
> (2) whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the [Children]'s welfare;
>
> (3) the wishes of the [Children], with more consideration given to [their] wishes if [they are] at least fourteen . . . years of age;
>
> (4) whether the [Children] ha[ve] established a close and beneficial relationship with both of the persons awarded joint custody;

(5) whether the persons awarded joint custody:

(A) live in close proximity to each other; and

(B) plan to continue to do so; and

(6) the nature of the physical and emotional environment in the home of each of the persons awarded joint custody.

Ind. Code § 31-17-2-15 (2025).

[19] Critically, "it [is] a matter of primary, but not determinative, importance that persons awarded joint custody have agreed to an award of joint legal custody." *Id.* And the second factor—Parents' willingness and ability to communicate and cooperate with one another—"is of particular importance in making legal custody determinations." *Richter*, 277 N.E.3d at 128. Joint legal custody is inappropriate between parties who "have made child-rearing a battleground" and cannot work together to advance the Children's interests. *Id.* (quoting *Milcherska v. Hoerstman*, 56 N.E.3d 634, 642 (Ind. Ct. App. 2016)).

[20] The trial court's findings and the record support the conclusion that joint custody was not appropriate in this case. Parents did not agree to joint legal custody: Mother sought sole legal custody while Father sought joint legal custody. And as noted by the court, although Parents agreed to exercise joint legal custody under the Agreed Provisional Order, that arrangement was not successful. "In practice, [it] led to excessive conflicts between [Parents]." Appellant's App. Vol. 2 at 11. For the year Parents shared legal custody of the

Children, they rarely compromised on important matters without significant disagreement. Indeed, the court found that "[t]he evidence [was] replete with disagreements and discord between" them. Appellant's App. Vol. 2 at 10.

[21] Again, despite Father's claim that the source of the difficulty between them can be directly traced back to Mother, the evidence shows he significantly contributed to their poor communication and lack of cooperation. For example, when Mother expressed frustration about Father's failure to seek medical care for E.H. when she was injured during his parenting time, Father retorted by saying, "Do you want to go there?" and accused Mother of not telling him about an injury D.H. experienced on another occasion. Ex. at 91. Additionally, when Parents were discussing dental plans for E.H., it devolved into an argument about notetaking and information sharing. Father was upset that Mother had not shared her notes from E.H.'s dentist appointment, but Mother explained that she didn't need to share them because Father had met with the dentist at that same appointment and discussed E.H.'s x-rays, diagnoses, and services E.H. received. *See* Respondent's Ex. A at 124, 143. Eventually, Father told Mother, "[F]rom this point forward when either of the kids see any doctor, I will no longer sit in the lobby. If they will only let one parent go back[,] either we will find a different doctor or I will be the one to go back and take notes." *Id.* at 143.

[22] The record is full of similarly heated exchanges and messages from Father awash with accusations and veiled threats. *See* Respondent's Ex. A at 44 ("You don't want to divide and conquer[,] you want to divide and exclude. You have

zero communication."), at 159 ("That's fine[,] keep saying how you refuse to notify me about things the kids are involved in, we will see what the judge has to say about that."); *see also* Ex. at 78 ("I can see you're not interested in doing the right thing, you just want to be in control. . . . I am tired of being the only one trying to be nice."), at 111 ("Is it really worth the money [o]n the small chance [the judge] gives you full custody[?] . . . I will appeal over and over and over anything less than half. Which will just be ongoing court costs that will eventually end in us at 50/50."). While Father adamantly contends he was and is willing and able to collaborate with Mother, the evidence supported the court's finding to the contrary.

[23] In light of Parents' demonstrated inability to work together for their Children's benefit, we cannot say the trial court abused its discretion in finding that joint legal custody was not appropriate here. *See Richter*, 277 N.E.3d at 129 (affirming trial court's determination that joint legal custody was inappropriate where parents could "not coparent without significant difficulty"); *see also In re Paternity of E.P.*, 194 N.E.3d 160, 167 (Ind Ct. App. 2022) (reversing an award of joint legal custody where the parents had not agreed to joint custody and had demonstrated an "inability to communicate and cooperate to advance the [c]hild's interests"). Thus, it had to determine who would exercise sole legal custody. As discussed in Part 2.1., the court found the evidence pertaining to the section 31-17-2-8 custody factors tipped the scales in Mother's favor, and we will not substitute our judgment for that of the trial court. The court did not abuse its discretion in awarding Mother sole legal custody of the Children.

### 3. Sanctions

On appeal, Mother requests we sanction Father for citing non-existent legal authorities in his original brief. She seeks $5,000 in attorney's fees as a sanction. In her amended brief, Mother stated "[t]here is really no excuse for an attorney to rely on case law and citations . . . without exercising due diligence" that they exist and stand for the propositions for which they are being used. Appellee's Amend. Br. at 16. These circumstances present an opportunity for this court to reemphasize the importance of verifying every citation, holding, and quote a litigant selects for inclusion in his or her filings to a court. We expect this even more so from an attorney when case-related information is provided by his non-lawyer client for use in his brief. "All attorneys are officers of the legal system and have a duty of candor toward tribunals." *Brown v. State*, 746 N.E.2d 63, 70 (Ind. 2001) (citing Ind. Professional Conduct Rule 3.3); *see* Ind. Trial Rule 11(A) ("The signature of an attorney constitutes a certificate by him that he has read the pleadings; [and] that to the best of his knowledge, information, and belief, there is good ground to support it[.]"). "[A] lawyer who uses . . . legal authority obtained from [artificial intelligence] in a pleading without independently confirming its accuracy fails to adhere to the obligation of candor to the court if those representations turn out to be false." Maura R. Grossman et al., *Is Disclosure and Certification of the Use of Generative AI Really Necessary?* 107 Judicature 68, 75 (2023).

"Courts nationwide have confronted this problem and imposed sanctions on attorneys . . . who file briefs containing fictitious authority." *Wilcox v. Gingrich*, 274 N.E.3d 1269, 1276 (Ind. Ct. App. 2026) (citing *Mid Cent. Operating Eng'rs Health & Welfare Fund v. HoosierVac LLC*, No. 2:24-cv-00326-JPH-MJD, 2025 WL 1511211, at *2 (S.D. Ind. May 28, 2025); *Kruse v. Karlen*, 692 S.W.3d 43, 54 (Mo. Ct. App. 2024)*, trans. denied*; *Shahid v. Esaam*, 918 S.E.2d 198, 202 (Ga. Ct. App. 2025)). However, given the unique circumstances at issue here, we do not find sanctions are warranted. First, Father's counsel brought this to the Court's attention and sought to rectify the situation almost immediately upon discovering his mistake. We also note that Mother did not call attention to this issue in her original brief. *See Dec v. Mullin*, 171 F.4th 940, 947 (7th Cir. 2026) (admonishing counsel for inclusion of non-existent citations and false quotations but declining to impose harsher sanctions where "she took responsibility and showed contrition" and "opposing counsel also failed to catch these errors and bring them to [the court's] attention"). Furthermore, Mother offers no argument or evidence that this prejudiced her. Although she submitted an amended appellee's brief in response to Father's amended brief, Father's arguments did not change in his amended brief, and neither did Mother's in response. In light of counsel's honesty in bringing this matter to the Court's attention and a lack of any alleged prejudice, we do not find monetary sanctions are appropriate in this case and therefore deny Mother's request.

Notwithstanding our decision, we echo the warnings issued by this Court and others around the country, especially to attorneys, of the risks posed by using

artificial intelligence in litigation and the sanctions that can result from its misuse. Possible sanctions include monetary penalties like those requested here, as well as "striking of filings, restrictions on future submissions, . . . or dismissal of the appeal." *Wilcox*, 274 N.E.3d at 1278. Just decisions depend "on the authenticity of the authorities cited by the parties . . . ." *Williams v. Kirch*, 268 N.E.3d 284, 288 (Ind. Ct. App. 2025). Fortunately, Father's counsel eventually corrected his mistake in this case, and our review was not hindered. Nonetheless, we implore attorneys to heed these nationwide warnings and ensure their filings comply with their duty of candor to the Court.

## Conclusion

Finding the trial court did not abuse its discretion in awarding Mother sole legal and primary physical custody of the Children, we affirm. Furthermore, we deny Mother's request to sanction Father and award her attorney's fees.

Affirmed.


Mathias, J., and Kenworthy, J., concur.


ATTORNEY FOR APPELLANT

Michael R. Auger
Franklin, Indiana


ATTORNEYS FOR APPELLEE

Donna Jameson
Ashley Walter
Law Office of Donna Jameson, LLC
Greenwood, Indiana