

ATTORNEYS FOR APPELLANT

Margaret M Christensen
Bingham Greenebaum Doll, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Stephen R. Creason
Aaron T. Craft
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

WPTA-TV,

*Appellant-Intervenor,*

v.

State of Indiana,

*Appellee-Plaintiff,*

And

John C. Mathew,

*Appellee-Defendant.*

October 31, 2017

Court of Appeals Case No.
35A02-1705-CR-1060

Appeal from the Huntington
Circuit Court

The Honorable Thomas M. Hakes,
Judge

Trial Court Cause No. 35C01-
1605-F3-96

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Intervenor, WPTA-TV, appeals the trial court's grant of its request for a digitally recorded version of a publicly available court record while limiting WPTA-TV's use of the audio record and barring its broadcast or dissemination.

We affirm.

## ISSUES

WPTA-TV presents us with three issues on appeal, which we consolidate and restate as the following two issues:

(1) Whether the trial court abused its discretion when it applied Indiana Judicial Rule 2.17 to limit the use of an audio recording of a sentencing hearing by a news media organization; and

(2) Whether the trial court's prohibition to broadcast the audio recording of a judicial proceeding violates the First Amendment to the United States Constitution.

## FACTS AND PROCEDURAL HISTORY

On May 27, 2016, the State filed an Information, charging John C. Mathew (Mathew) with rape, as a Level 3 felony; sexual battery, as a Level 6 felony; and two Counts of battery, as Class B Misdemeanors. The State subsequently amended the rape charge to a charge for sexual battery, as a Level 6 felony. After Mathew pled guilty to both sexual battery Counts, the State dismissed the

misdemeanor charges. On April 17, 2017, the trial court conducted a sentencing hearing during which the trial court imposed a two-year sentence on each Count. The trial court ordered the sentences to run consecutive to each other and suspended the entire sentence to probation with Mathew serving two years on "electronic monitoring/home detention" as a condition of probation. (Appellant's App. Vol. II, p. 5). Mathew was required to register as a sex offender.

[5] On April 18, 2017, WPTA-TV submitted an access to public records request to receive the "audio recording of sentencing hearing[;] documents (electronic or otherwise) submitted as evidence[; and] private letters submitted on behalf of victim and defendant[.]" (Appellant's App. Vol. II, p. 11). On April 20, 2017, the trial court issued its Order Limiting the Use of Court Record and Barring Its Broadcast or Dissemination, concluding in, pertinent part, as follows:

> 2. The [c]ourt is required to provide the record as requested.

> 3. The requesting person may not broadcast the record, subject to the contempt power of this [c]ourt.

> 4. The requesting person may not alter, add, delete or replace any part of the record provided.

(Appellant's App. Vol. II, p. 7).

[6] On May 2, 2017, WPTA-TV filed its verified motion to intervene and reconsider the trial court's order of April 20, 2017, claiming that the order

violated the provisions of Indiana Administrative Rule 9(G). Two days later, on May 4, 2017, the trial court granted WPTA-TV leave to intervene and indicated that it would rule on its request for reconsideration under Indiana Trial Rule 60(D). On May 17, 2017, the trial court issued its Order, denying WPTA-TV's motion to reconsider, and finding, in pertinent part, that:

> [WPTA-TV] received as per their request the documents and CD on April [20], 2017. This was in proper compliance with Administrative Rule 9(D). The providing of the requested items gave [WPTA-TV] the ability to inspect and copy a court record which is the definition of Public Access as found in Administrative Rule 9(C)(6).

> The [c]ourt then, as required by Administrative Rule 9(D)(4) issued the order limiting the use of the record. [WPTA-TV's] entire argument in its Motion to Reconsider revolves around Administrative Rule 9(G) and [WPTA-TV's] argument that the [c]ourt in prohibiting the use and dissemination of the Record violates the provisions of Rule 9(G).

> The [c]ourt followed Administrative Rule 9(D)(4) and examined Judicial Conduct Rule 2.17 which states in part: "Except with prior approval of the Indiana Supreme Court, a Judge shall prohibit the broadcasting, televising, recording or taking photos in the courtroom . . ." The limit placed upon [WPTA-TV] is in compliance with this rule. Broadcasting all or parts of a court record is no different than [WPTA-TV] making their own recording and then broadcasting it . . . an act that is not allowed by the Rule.

> Copies of all documents requested were promptly provided but limited in use by the [c]ourt following the dictates of Administrative Rule 9(D)(4).

(Appellant's App. Vol. II, p. 8).

WPTA-TV now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Judicial Rule 2.17*

Focusing on the interplay between Administrative Rule 9(D)(4) and Judicial Rule 2.17, WPTA-TV contends that the trial court's interpretation to allow access but, at the same time, prohibit the use or dissemination of the recording, renders that same access to the record meaningless. As Judicial "Rule 2.17 is concerned with contemporaneous recordings in courtrooms, not *ex post facto* dissemination of previously-recorded testimony[,]" WPTA-TV maintains that the Rule cannot serve as a proper basis for denying its motion to reconsider and upholding the trial court's order limiting the use and dissemination of the courtroom's record. (Appellant's Br. p. 22).

"Pursuant to the inherent authority of the Indiana Supreme Court and pursuant to Indiana Code section 5-14-3-4(a)(8)," Administrative Rule 9 governs the public access to, and confidentiality of, court records. Starting from the presumption of open public access to court records, the administrative Rule's objective is "to provide maximum public accessibility to [c]ourt [r]ecords," while "taking into account public policy interests that are not always fully compatible with unrestricted access." (Admin.R.9(A) cmt). In accordance with these purposes, Administrative Rule 9(D) regulates the general access to court records, and provides that:

(1) A [c]ourt [r]ecord is accessible to the public except as provided in section 9(G).

(2) The rule applies to all [c]ourt [r]ecordings, regardless of the manner of creation, method of collection, form of storage, or the form in which the record is maintained.

(3) If a [c]ourt [r]ecord, or portion thereof, is excluded from public access, there shall be a publicly accessible indication of the fact of exclusion but not the content of the exclusions. This sub-section (3) does not apply to court proceedings, or [c]ourt [a]dministrative [r]ecords which are confidential pursuant to law.

(4) A [c]ourt may manage access to audio and video recordings of its proceedings to the extent appropriate to avoid substantial interference with the resources or normal operation of the court and to comply with Indiana Judicial Conduct Rule 2.17. This provision does not operate to deny to any person the right to access a [c]ourt [r]ecord under Rule 9(D)(1).

[10] Accordingly, establishing the parameters of WPTA-TV's access and use of the audio recording of the sentencing hearing, the trial court turned to Judicial Rule 2.17 for further guidance. Judicial Rule 2.17, which regulates the broadcasting of proceedings, states:

Except with prior approval of the Indiana Supreme Court, a judge shall prohibit broadcasting, televising, recording, or taking photographs in the courtroom and areas immediately adjacent thereto during session of court or recesses between sessions, except that a judge may authorize:

(1) The use of electronic or photographic means for the presentation of evidence, for the perpetuation of a record, or for other purposes of judicial administration;

(2) The broadcasting, televising, recording, or photographing of investitive, ceremonial, or naturalization proceedings;

(3) Graphic or electronic recording and reproduction of appropriate court proceedings under the following conditions:

    a. The means of recording will not distract participants or impair the dignity of the proceedings;

    b. The parties have consented, and the consent to being depicted or recorded has been obtained from each witness appearing in the recording and reproduction;

    c. The reproduction will not be exhibited until after the proceeding has been concluded and all direct appeals have been exhausted; and

    d. The reproduction will be exhibited only for instructional purposes in educational institutions.

Under Indiana Administrate Rule 9(D), the requested audio recording of the sentencing hearing was a public court record which should be made available—and was—to WPTA-TV. In accordance with Administrative Rule 9(D)(4), the trial court managed the access to its audio recording in compliance with Indiana Judicial Rule 2.17. Implicitly concluding that WPTA-TV's request fell outside the three exceptions listed in the Rule, the trial court granted a copy of

the recording to WPTA-TV, but prohibited its broadcast as mandated by the Rule's preamble.[1]

[11]     WPTA-TV now attempts to circumvent the application of Judicial Rule 2.17 by contending that the Rule is only applicable to the contemporaneous recording of the proceedings and not to the *ex post facto* broadcasts of a hearing. We find WPTA-TV's interpretation of Judicial Rule 2.17 too narrow. Witnesses and other actors in the current courtroom hearings proceed with the understanding that although their words are recorded, these recordings are used solely within the judicial realm, thereby protecting the effectiveness, reliability, and fairness of the judicial system. Permitting the audio of a proceeding to be broadcast to the public in general by way of any type of media, would have an intimidating impact, not only on the behavior of the witnesses and other actors—causing possible fear and reluctance to testify—but also on the openness and candidness of any trial testimony. We perceive no difference between the effect of broadcasting a hearing *ex post facto* versus the contemporaneous dissemination of the proceeding. As we believe that "the atmosphere essential to the preservation of a fair trial—the most fundamental of all freedoms—must be maintained at all costs," we affirm the trial court's decision, prohibiting the

---

[1] A review of the very limited case law involving the application of Judicial Rule 2.17 indicates it has become standard practice for trial courts to require the party requesting an audio recording of a court proceeding to sign an "Acknowledgment," agreeing not to broadcast the recording in any media whatsoever. *See Clements v. Altice*, 48 N.E.3d 389 (Ind. Ct. App. 2016) (unpublished memorandum opinion); *Clements v. Hanley*, 20 N.E.3d 924 (Ind. Ct. App. 2014) (unpublished memorandum opinion).

"[b]roadcasting [of] all or parts of a court record." *Estes v. Texas*, 381 U.S. 532, 540, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); (Appellant's App. Vol. II, p. 8).

## II. *First Amendment of the United States Constitution*

Next, WPTA-TV contends that the trial court's Order violates the First Amendment to the United States Constitution as it constitutes a "gag order" intended to muzzle the media and thus amounts to an impermissible prior restraint on free speech. (Appellant's Br. p. 13).

The First Amendment, made applicable to the States through the Fourteenth Amendment, provides that "Congress shall make no law . . . abridging the freedom of speech . . ." U.S. Const., Amend. I. A prior restraint is a term used to describe "administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are about to occur." *Alexander v. United States*, 509 U.S. 544, 550, 113 S.Ct. 2766, 2771, 125 L.Ed.2d 441 (1993). The special vice of a prior restraint is that "communication will be suppressed, either directly or by inducing excessive caution in the speaker, before an adequate determination that it is unprotected by the First Amendment." *Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations*, 413 U.S. 376, 93 S.Ct. 2553, 2561, 37 L.Ed.2d 669 (1973). The common thread running through free speech cases is that prior restraints on speech and publication are the most serious and the least tolerable infringement on free speech rights. *Nebraska Press Association v. Stuart*, 427 U.S. 539, 96 S.Ct. 2791, 2803, 49 L.Ed.2d 683 (1976). However, the protections the First

Amendment affords against prior restraints are not triggered unless there is state action. *Alexander*, 509 U.S. at 550. Although a prior restraint is not per se unconstitutional, it comes to an appellate court with a heavy presumption against its constitutional validity. *Mishler v. MAC Systems*, 771 N.E.2d 92, 95 (Ind. Ct. App. 2002).

[14] Despite WPTA-TV's attempt to define the trial court's Order as a gag order, we are not persuaded. The trial court's Order does not prohibit WPTA-TV from reporting on Mathew's sentencing hearing and using the transcript of the hearing in its publication or broadcast; rather the trial court only prohibited the dissemination of the audio recording of the hearing to the public at large while leaving all other forms of communication available. Accordingly, the issue here is not a complete ban on a publication by the press; rather WPTA-TV's constitutional claim turns on the breadth of the First Amendment's "implicit guarantee against undue interference with the acquisition of knowledge." LAURENCE H. TRIBE, AMERICAN CONSTITUTIONAL LAW § 12-22, at 976 (2d ed. 1988). "The First Amendment is concerned with fostering 'indispensable conditions of meaningful communication,' but this protection must be applied with 'discrimination and temperance' and in consideration of possible encroachment on other important interests." *In re WTHR-TV*, 693 N.E.2d 1, 15 (Ind. 1998) (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 587-88, 100 S.Ct. 2814, 2833-34, 65 L.Ed.2d 973 (1980) (Brennan, J., concurring)).

> Freedom of the press, hard-won over the centuries by men of courage, is basic to a free society. But basic too are courts of justice, armed with the power to discover truth.

*Garland v. Torre*, 259 F.2d 545, 548 (2d Cir. 1958). Both criminal defendants and society in general have a major stake in accurate, informed, and fair adjudication of criminal proceedings. *In re WTHR-TV*, 693 N.E.2d at 15.

[15] As such "the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech." *State v. Economic Freedom Fund*, 959 N.E.2d 794, 801-02 (Ind. 2011). The principal inquiry in determining whether a rule is content-neutral or content-based is the state's purpose for enacting it. *Ward v. Rock Against Racism*, 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed. 661 (1989). "A regulation that serves purposes unrelated to the content of expression are deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Id*. In essence, "[g]overnment regulation of expressive activity is content neutral so long as it is justified without reference to the content of the regulated speech." *Id*. Here, we find Judicial Rule 2.17 to be content neutral as it applies to all audio recordings of hearings and proceedings regardless of their content or the message conveyed.

[16] Nevertheless, content-neutral speech regulations can burden important First Amendment interests because, by restricting speech, they limit the marketplace of ideas and quell public debate. *See, e.g., City of Ladue v. Gilleo*, 512 U.S. 43, 55, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994). To balance these competing interests,

the United States Supreme Court has held that content-neutral laws are subject to an intermediate level of scrutiny, which affords the government more leeway in meeting its legitimate regulatory objectives. *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 662, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994). A content-neutral law will be upheld under intermediate scrutiny only if it is narrowly tailored to serve a substantial governmental interest and leaves open adequate alternative channels of communication. Id. "To be narrowly tailored, a statute need not employ the least restrictive or least intrusive means of accomplishing the governmental purpose." *Ward*, 491 U.S. at 798. "Rather, the requirement of narrowly tailoring is satisfied so long as the . . . . regulation promotes a substantial governmental interest that would be achieved less effectively absent the regulation." *Id*. at 799. Judicial Rule 2.17 is aimed at the protection and preservation of a fair trial by reducing the intimidating impact the broadcast of an audio recording would produce on witnesses and other judicial actors. It is narrowly-tailored to only apply to courtroom recordings, while it does not restrict the exhibition of recordings where these governmental interests are not implicated, such as ceremonial functions. By limiting the scope of Judicial Rule 2.17 to merely those instances where the governmental interest is strongest, the state judiciary has narrowly tailored the Rule to advance its legitimate interest without overly burdening free expression while, at the same time, providing ample alternative channels of communication of the information contained in the recordings by making the transcripts of the hearing available. Accordingly, WPTA-TV fails on its claim that Judicial Rule 2.17 runs afoul of the First Amendment.

# CONCLUSION

Based on the foregoing, we hold that the trial court properly applied Indiana Judicial Rule 2.17 to limit the use by a news media organization of an audio recording of a sentencing hearing; and this prohibition does not violate the First Amendment to the United States Constitution.

Affirmed.

Robb, J. and Pyle, J. concur