

I N   T H E

# Court of Appeals of Indiana



FILED

Jan 30 2026, 9:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

K.A.,

*Appellant-Respondent*

v.

Z.G.,

*Appellee-Petitioner*

---

January 30, 2026

Court of Appeals Case No.
25A-PO-1849

Appeal from the Fountain Circuit Court

The Honorable Peggy Lohorn, Senior Judge

Trial Court Cause No.
23C01-2505-PO-45

---

**Opinion by Judge Bailey**
Chief Judge Tavitas and Judge Kenworthy concur.

**Bailey, Judge.**

## Case Summary

K.A. appeals a portion of a protective order requiring him to remove a Facebook page entitled "Covington IN State Cop Watch" ("the Facebook page"). He contends that portion of the order violates his First Amendment right to free speech. We agree in part and reverse that portion of the protective order that disallows protected speech on the Facebook page. We affirm the protective order in all other respects.

## Issues

K.A. raises the following two restated issues on appeal:

I.      Whether statements in the Facebook page constitute "true threats" such that they are not protected by the First Amendment.

II.     Whether the order to remove the entire Facebook page is an unconstitutional prior restraint on speech.

## Facts and Procedural History

On December 29, 2024, State Trooper Z.G. initiated a traffic stop of K.A. for what K.A. believes was "no reason." Tr. at 39. K.A. created the Facebook page after Trooper Z.G. initiated two additional traffic stops of him, which he also viewed as being for "no reason." *Id*. K.A.'s initial post on the Facebook page was a picture of Trooper Z.G. and the following statement:

> Hello friends! Please invite everyone you know to like this page, invite their friends and let's all put an end to the bs going in our happy little town! The targeting of our businesses and our VFW post and the harassment of their patrons has to stop - and it must stop now!

Ex. at 5. That post was followed by another post by K.A. (under the account name "Covington IN State Cop Watch") stating, "Please share sightings and your personal experiences, if you care to." *Id.*

[4] K.A. and other individuals subsequently made additional posts to the Facebook page. Such posts by K.A. included, "PSA: Trooper G is at home watching 'Cops' reruns tonight[,]" *id.* at 7; "Troop G just spotted passing Sheltons headed to town[,]" *id.* at 9; "We would love to invite everyone to wish a great big happy birthday to the dirtiest cop in the county today!!", followed by a photograph of Trooper Z.G. in uniform, *id.* at 11; "Troop g off duty All clear in Covington Except bad weather[,]" *id.* at 16; and "Troop g is at home tonight. Get out and enjoy the stormy weather!!", *id.* at 23. The latter post was accompanied by a screen shot of text messages between two unidentified persons, one of whom stated, "Yes. It's safe tonight, brother. The terror returns at dusk in the morrow. Travel at thine own risk[,]" which was followed by two laughing emojis from "Covington IN State Cop Watch". *Id.* at 24.

[5] On May 15, 2025, Trooper Z.G. filed a petition for a protective order. At the May 22 hearing on his petition, Trooper Z.G. and K.A. both testified. In addition, the trial court admitted thirty of Trooper Z.G.'s proffered exhibits, many of which contained screenshots of portions of the Facebook page.

Trooper Z.G. stated that some of the Facebook page posts from individuals other than K.A. are "threatening[.]" Tr. at 18. Specifically, he pointed to: a post from a Facebook account under the name Matthew McMasters which states, "Little Kemp did an illegal stop on me awhile back. We need to get these f_ckers[,]" Ex. at 83; an account with the name Travis Cadman which posted, "I've got something coming for his ass. Will be here within a week[,]" *id*. at 86; an account with the name Carl Blackburn that posted a photo of a bomb's mushroom cloud, which Trooper Z.G. believes to be "a vague threat referencing bombing [his] home[,]" Tr. at 19; a comment from Eli Leaver that suggests citizens should "stand our ground and be aggressive back[,]" *id*. at 19-20; and a comment from Chuck Richardson suggesting the police should be "met with deadly force," *id*. at 20. Trooper Z.G. stated that these third-party comments "placed [him] in fear of physical harm." *Id*. at 18. He explained, "I understand that when I am on duty I am subject to those things, however, I believe when I am off duty I should not be a subject of that behavior." *Id*. at 21. He therefore specifically requested that the protective order "extend[] to social media posts about [him] when [he is] off duty." *Id*.

[6] Several exhibits contained copies of comments on the Facebook page from third parties who indicated they believed the Facebook page had turned into "harassment," Ex. at 59, and "stalk[ing]," *id*. at 13, 75. Exhibit 27 was an undated copy of a lengthy comment on the Facebook page from account name Adam Stonebraker, which stated in part:

But, when did this page go from reporting your issues with this officer to bullying and stalking him? I've seen comments about his build, his mustache, his nose/etc what does any of that have to do with the issues people have with him? This is the issue with pages like this it's gone from a useful tool to post experiences with this guy to "this cop is bad, let's stalk and bully/make fun of him[.]"

*Id.* at 77.

[7] The court also admitted Trooper Z.G.'s exhibits containing screen shots from videos recorded from the security camera outside his home. Trooper Z.G. testified that the exhibits showed K.A.'s vehicle driving on the road past Trooper Z.G.'s home on multiple dates in April and May 2025. K.A. testified that he drove by Trooper Z.G.'s home on multiple occasions because he often dropped off his girlfriend's son at a friend's house located nearby, requiring him to pass by Trooper Z.G.'s home. K.A. also testified that he created the Facebook page because he believes Trooper Z.G. initiated three traffic stops of him "for no reason" other than to harass him, and he was aware of "probably four or five dozen similar instances of [Trooper Z.G.] harassing citizens while he's on duty." Tr. at 39-40.

[8] At the conclusion of the hearing, the trial court issued an Order of Protection with findings, which included the following:

f. [K.A.] represents a credible threat to the safety of [Trooper Z.G.] or a member of [his] household.

g. [Trooper Z.G.] has shown, by a preponderance of the evidence, that stalking or repeated acts of harassment has [sic] occurred sufficient to justify the issuance of this Order.

h. [K.A.] does agree to the issuance of the Order for Protection.

i. The following relief is necessary to bring about a cessation of the violence or the threat of violence.

Additional Findings:

[K.A.] is hereby ordered to remove the Face[b]ook page Covington IN State Cop Watch immediately.

App. at 15.

On June 18, K.A. filed a verified motion to correct error in which he stated, in relevant part,

3. [K.A.] created this Facebook page following multiple interactions with [Trooper Z.G.], who was acting in his capacity as a Trooper employed by the Indiana State Police, in which he believes strongly that [Trooper Z.G.] acted inappropriately and abused his power as a law enforcement officer. While certainly critical of [Trooper Z.G.], the page was created entirely as satire—to report sightings of [Trooper Z.G.] (referenced as "Trooper G" or "Troop G") in public spaces around Covington so that [K.A.] could humorously warn persons to avoid these spaces in order to avoid a violation of their rights.

4. In order to obtain content for the Facebook page, [K.A.] never intentionally travelled near [Trooper Z.G.'s] house in order to report on his activities at home. Rather, Covington is a very

small town—as their addresses indicate, [K.A.] resides less than half a mile from [Trooper Z.G.]—and [K.A.] frequently passed, or passed near, [Trooper Z.G.'s] home to visit friends or family members or otherwise to run errands around town. On occasion, upon noticing that [Trooper Z.G.'s] patrol vehicle was parked in his driveway, [K.A.] would post to the Facebook page a statement indicating generally that [Trooper Z.G.] was off-duty. This, again, was intended as humorous satire indicating, to any persons viewing the page, that the "streets were safe" in Covington….

*Id*. at 19-20.

[10] The verified motion to correct error also stated that the finding that K.A. "does agree to the issuance of the Order for Protection" was erroneous. *Id*. at 15. The motion asserted that the portion of the protective order that requires K.A. to completely remove the Facebook page violates his First Amendment right to free speech. On July 23, the trial court denied K.A.'s motion to correct error, and this appeal ensued.

## Discussion and Decision

[11] K.A. appeals a portion of the protective order and the denial of his motion to correct error. K.A. does not challenge the portion of the protective order prohibiting him from contacting Trooper Z.G. Rather, his only contention is that the portion of the order requiring the deletion of the Facebook page violates his right to free speech, as protected by the First Amendment.

[12] We review the denial of a motion to correct error for an abuse of discretion. *See, e.g.*, *Jones v. Jones*, 866 N.E.2d 812, 814 (Ind. Ct. App. 2007). We review

findings issued in a protective order under a two-tiered standard of review: "we first determine whether the evidence supports the findings, and then we determine whether the findings support the order. Findings are clearly erroneous when a review of the record leaves us firmly convinced that a mistake has been made." *R.H. v. S.W.*, 142 N.E.3d 1010, 1014 (Ind. Ct. App. 2020) (citation modified). However, our standard of review for constitutional questions is de novo. *See, e.g.*, *Morales v. Rust*, 228 N.E.3d 1025, 1033 (Ind. 2024), *cert. denied*.

In addition, we note that Trooper Z.G. has not filed an appellee's brief. Under such circumstances, we will not develop an argument for the appellee, and we apply a less stringent standard of review. *State v. Miracle*, 75 N.E.3d 1106, 1108 (Ind. Ct. App. 2017). That is, we will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error. *Salyer v. Wash. Regular Baptist Church Cemetery*, 141 N.E.3d 384, 386 (Ind. 2020). "Prima facie error in this context means 'at first sight, on first appearance, or on the face of it.'" *Id.* (citation omitted).

**Issue One: True Threat**

The First Amendment of the United States Constitution protects "the freedom of speech." U.S. Const. Amend. 1. For example, "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987); *see also* *Brewington v. State*, 7 N.E.3d 946, 959 (Ind. 2014) (noting the First Amendment protects "speech that is critical of those who hold public office"); *Ellis v. State*,

194 N.E.3d 1205, 1216 (Ind. Ct. App. 2022) (noting First Amendment protection "even envelopes profane commentary directed at law enforcement"), *trans. denied*. It also protects the right to record and report on police activity in public spaces. *See Am. Civ. Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012). It protects satire and parody. *See, e.g.*, *Hamilton v. Prewett*, 860 N.E.2d 1234, 1244 (Ind. Ct. App. 2007), *trans. denied*. And it applies to expression on social media pages, such as Facebook. *See Counterman v. Colorado*, 600 U.S. 66 (2023); *see also, e.g.*, *Novack v. City of Parma*, 932 F.3d 421, 433 (6th Cir. 2019) (applying First Amendment protection to a social media page mocking a police department).

[15] However, the First Amendment "does not absolutely protect all categories of speech and means of expression." *Moone v. State*, 250 N.E.3d 1101, 1107 (Ind. Ct. App. 2025), *trans. denied*. For example, it does not protect statements that incite violence or are "true threats." *Counterman*, 600 U.S. at 73.

> The "true" in th[e] term [true threat] distinguishes what is at issue from jests, "hyperbole," or other statements that when taken in context do not convey a real possibility that violence will follow (say, "I am going to kill you for showing up late"). *Watts v. United States*, 394 U.S. 705, 708 … (1969) (per curiam). True threats are "serious expression[s]" conveying that a speaker means to "commit an act of unlawful violence." [*Virginia v.*] *Black*, 538 U.S. [343,] 359 [(2003)]. Whether the speaker is aware of, and intends to convey, the threatening aspect of the message is not part of what makes a statement a threat, as this Court recently explained. *See Elonis v. United States*, 575 U.S. 723, 733 … (2015). The existence of a threat depends not on "the mental state of the author," but on "what the statement conveys" to the

person on the other end. *Ibid*. When the statement is understood as a true threat, all the harms that have long made threats unprotected naturally follow. True threats subject individuals to "fear of violence" and to the many kinds of "disruption that fear engenders." *Black*, 538 U.S. at 360 … (internal quotation marks omitted).

*Id*. at 74 (citation modified). Thus, "a statement is a true threat if the speaker consciously disregards that the communication could put the target in fear." *Moone*, 250 N.E.3d at 1108 (citing *Counterman*, 600 U.S. at 79).

[16] The trial court ordered K.A. to remove the Facebook page because it found that K.A. "represents a credible threat to the safety" of Trooper Z.G., and the removal of the Facebook page was necessary "to bring about a cessation of the … threat of violence." App. at 15. K.A. asserts that none of the comments he personally made on the Facebook page—i.e., the comments by the account "Covington IN State Cop Watch"—constituted true threats. To the extent those comments simply criticized Trooper Z.G.'s performance as a law enforcement officer and stated when Trooper Z.G. was on duty, we agree. Such statements are protected speech and not likely to be reasonably interpreted by anyone as threats of violence. *See Hill*, 482 U.S. at 461; *Alvarez*, 679 F.3d at 595; *Ellis*, 194 N.E.3d at 1216. And, in fact, Trooper Z.G. testified, "I understand that when I'm on duty I'm subject to the public watching what I do, posting about what I do and videoing what I do." Tr. at 8.

[17] However, Trooper Z.G. testified that he perceived some of the comments of third parties on the Facebook page as "threats" that "placed [him] in fear of

physical harm," *id*. at 18; therefore, he requested that the protective order "extend[] to social media posts about [him] when [he is] off duty," *id*. at 21 Specifically, he found the comments of McMasters, Cadman, Blackburn, Leaver, and Richardson to be threats of violence to him and/or his family and home. We agree that those statements convey "a real possibility" that the speakers intend to engage in violence against Trooper Z.G. *Moone*, 250 N.E.3d at 1107 (quoting *Counterman*, 600 U.S. at 66). In other words, those third-party statements "would cause a reasonable person to feel afraid because they suggest [the speakers] might commit an act by force or resort to physical violence" against Trooper Z.G. *Id.* at 1108. And that is, in fact, how those comments were viewed by not only Trooper Z.G. but also other third-party commenters.

[18]   Furthermore, it is undisputed that K.A. is the creator and administrator of the Facebook page and that he was aware that third parties also made comments about Trooper Z.G. on that page. In fact, K.A. invited and encouraged comments from third parties when he created the Facebook page, and he periodically responded to third-party comments. Yet, K.A. consciously disregarded that the third-party communications by McMasters, Cadman, Blackburn, Leaver, and Richardson could put Trooper Z.G. in fear.[1] Those

---

[1] K.A. asserts that "basic principles of justice preclude holding him responsible for [the posts of the] others." Appellant's Br. at 15 n.4. However, he cites no legal authority in support of his position that he, as creator and administrator of the Facebook page, should not be held responsible for third-party comments which he encouraged and invited, and we find no such authority.

comments are true threats that are not protected by the First Amendment, and the trial court did not err in prohibiting such true threats.

[19] Similarly, K.A.'s own statements about Trooper Z.G.'s whereabouts and actions while he was off duty and/or in his own home crossed the line from reporting about police activity in public spaces, which is protected speech, *see Alvarez*, 679 F.3d at 595, to unprotected threatening speech. That is, those comments reasonably led Trooper Z.G. to fear physical violence upon himself and/or his family and home while he was off duty. This is especially true given that the reporting of Trooper Z.G.'s location while off duty was done within the context of the aforementioned threats of violence against Trooper Z.G. from third-party commenters—comments of which K.A. was aware as administrator of the Facebook page.

[20] In sum, comments on the Facebook page reporting about Trooper Z.G.'s actions while on duty as a law enforcement officer were protected by the First Amendment right to free speech. *See, e.g.*, *Brewington*, 7 N.E.3d at 959. However, the threatening comments made by third parties and K.A. are not protected speech, *see, e.g.*, *Moone*, 250 N.E.3d at 1108, and the trial court did not err to the extent it ordered the removal of such speech from the Facebook page.

**Issue Two: Prior Restraint**

[21] K.A. also asserts that the order for him to remove the entire Facebook page is an unconstitutional prior restraint.

"A prior restraint is a term used to describe 'administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are about to occur.'" *WPTA-TV v. State*, 86 N.E.3d 442, 447 (Ind. Ct. App. 2017) (quoting *Alexander v. United States*, 509 U.S. 544, 550 … (1993)). "Restraining orders and injunctions that forbid future speech activities," such as non-disparagement orders, "are classic examples of prior restraints." *In re Paternity of G.R.G.*, 829 N.E.2d 114, 124 (Ind. Ct. App. 2005) (citation omitted); see also *Shak v. Shak*, 484 Mass. 658, 144 N.E.3d 274, 277 (2020) ("Nondisparagement orders are, by definition, a prior restraint on speech.").

"The common thread running through free speech cases is that prior restraints on speech and publication are the most serious and the least tolerable infringement on free speech rights." *WPTA-TV*, 86 N.E.3d at 447 (citing *Neb. Press Ass'n. v. Stuart*, 427 U.S. 539 … (1976)). Thus, while "a prior restraint is not per se unconstitutional," *id.*, it does come to a court " 'bearing a heavy presumption against its constitutional validity,'" *In re Paternity of K.D.*, 929 N.E.2d 863, 868 (Ind. Ct. App. 2010) (quoting *N.Y. Times Co., v. U.S.*, 403 U.S. 713, 824 … (1971)). To determine whether a prior restraint is constitutional under the First Amendment, the United States Supreme Court "has looked to (a) 'the nature and extent' of the speech in question, (b) 'whether other measures would be likely to mitigate the effects of unrestrained' speech, and (c) 'how effectively a restraining order would operate to prevent the threatened danger.'" *Shak*, 144 N.E.3d at 279 (quoting *Neb. Press Ass'n*, 427 U.S. at 562 …. In addition, "'the [United States Supreme] Court has repeatedly emphasized that the prior censorship of expression can be justified only by the most compelling government interest.'" *David K. v. Lane*, 839 F.2d 1265, 1276 (7th Cir. 1988) (quoting *Brown v. Glines*, 444 U.S. 348, 364 … (1980) (Brennan, J., dissenting)).

*Israel v. Israel*, 189 N.E.3d 170, 179-80 (Ind. Ct. App. 2022), *trans. denied,* (citation modified).

Obviously, there is a compelling government interest in protecting individuals from true threats. As previously noted, the true threats contained in the Facebook page are not protected by the First Amendment and may be prohibited by the court order. *See, e.g.*, *Counterman*, 600 U.S. at 73; *Moone*, 250 N.E.3d at 1107-08. However, the trial court's order that K.A. remove the Facebook page was not limited to the removal of true threats or the prohibition of future posts containing true threats. Rather, the blanket order to remove the entire Facebook page requires K.A. to remove and refrain from posting not only the threats, but also protected speech, such as the criticism of public officials acting in their official capacities. *See Brewington*, 7 N.E.3d at 959 (noting criticism of public officials, "inevitably, will not always be reasoned or moderate; public figures as well as public officials will be subject to vehement, caustic, and sometimes unpleasantly sharp attacks," and "[e]ven when those attacks are unfair, offensive, or ignorant, the [right of free speech] protects them so that legitimate debate will not be stifled") (citation modified). To the extent the protective order prohibits such protected speech in the future, it is an unconstitutional prior restraint.

## Conclusion

The protective order does not violate K.A.'s First Amendment right to freedom of speech to the extent it prohibits the inviting, posting, and/or maintaining of

true threats on the Facebook page. However, to the extent the protective order prohibits past non-threatening speech about Trooper Z.G.'s actions as a public law enforcement officer, it violates the First Amendment, and, to the extent it prohibits such non-threatening speech in the future, it is an unconstitutional prior restraint. Therefore, we affirm in part, reverse in part, and remand with instructions to modify the protective order in a manner consistent with this decision.

Affirmed in part, reversed in part, and remanded.

Tavitas, C.J., and Kenworthy, J., concur.

ATTORNEYS FOR APPELLANT

Joshua T. Bleisch
Gavin M. Rose
ACLU of Indiana
Indianapolis, Indiana